UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LISA REMBERT,**

        **Plaintiff,**

v.                            **Case No.  6:22-cv-544-CEM-LHP**

**DUNMAR ESTATES, DUNMAR
HOMEOWNERS ASSOCIATION,
FERDINANDSEN ENTERPRISES,
INC., EMPIRE MANAGEMENT
GROUP, INC., CITY OF WINTER
SPRINGS, and CITY OF WINTER
SPRINGS CODE
ENFORCEMENT BOARD,**

        **Defendants.**

_____/

**ORDER**

THIS CAUSE is before the Court upon *sua sponte* review. As set forth below,

Plaintiff's counsel, Roderick Ford, will be required to **SHOW CAUSE** as to why

sanctions should not be imposed for his behavior in this litigation and why he should

not be referred to the Florida Bar and the Middle District of Florida grievance

committee for his pattern of bad faith behavior in litigation throughout the Middle

District of Florida.

**I.**     **BACKGROUND**

This case was initiated on March 16, 2022, when Plaintiff's attorney, Roderick Ford, filed the Complaint (Doc. 1) on Plaintiff's behalf. Plaintiff paid the $402 filing fee. (*See* Text of Dkt. Entry 1 (noting that the filing fee was paid and providing the receipt number)). Two days later, this Court issued its standard Initial Order (Doc. 3) and Notice to Counsel and Parties (Doc. 4). The Initial Order reminded counsel and parties of their obligations for filing certain documents under the Middle District of Florida's Local Rules, including a Notice of Pendency of Other Actions and a Disclosure Statement. (Doc. 3 at 1–2). The Notice to Counsel and Parties warned that "[f]ailure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." (Doc. 4). Mr. Ford failed to timely comply with the Initial Order—he did not file the Notice of Pendency of Other Actions or the Disclosure Statement. As such, pursuant to the undersigned's standard practice, this case was dismissed without prejudice. (Apr. 6, 2022 Order, Doc. 5, at 1–2).

In response, Mr. Ford filed an "Emergency Motion to Re-Open Case" (Doc. 6), which violated the Local Rules because it did not "include an introductory paragraph that explains the nature of the exigency and states the day by which a ruling is requested," M.D. Fla. R. 3.01(e). Indeed, there was no emergency or time sensitive issue raised in the Emergency Motion to Re-Open Case, which in and of

itself is a basis for sanctions. *Id.* ("The unwarranted designation of a motion as an emergency can result in a sanction."). The Emergency Motion to Re-Open Case also failed to state good cause to reopen the case, and it was denied. (Apr. 7, 2022 Order, Doc. 7, at 2).[1]

Mr. Ford then filed a Motion for Reconsideration (Doc. 8). The thrust of his argument in the Motion for Reconsideration was that Mr. Ford was intimately familiar with the Local Rules and that he did not violate them, it was only that he ran afoul of the "unique preferences or idiosyncrasies of this particular federal judge that contributed to the oversight and confusion." (Doc. 8 at 5–6). Specifically, Mr. Ford contended that there was no timeframe within which he was required to file the Disclosure Statement and that the imposed fourteen-day time period was unreasonable.

Contrary to Mr. Ford's representations, Local Rule 3.03(a) requires a disclosure statement to be filed "[w]ith the first appearance" of each party. In other words, to comply with that Rule, Mr. Ford should have filed the disclosure statement along with the Complaint. Instead of taking action against Mr. Ford for failing to properly comply with Local Rule 3.03(a), this Court issued its Initial Order, giving

---

[1] The April 7, 2022 Order also clarified that there had been a scriveners error in the docket entry text, but as stated in the text of the April 6, 2022 Order, the case had been dismissed *without* prejudice. (Doc. 7 at 1–2; Doc. 5 at 2). The docket entry has since been edited to properly reflect the without prejudice dismissal.

Mr. Ford a fourteen-day grace period within which to comply—a practice that is customary among many judges in the Middle District of Florida. *See, e.g.*, *McKnight v. Am. Residential Prods., LLC*, No. 6:23-cv-2-RBD-LHP, Doc. 9; *Lee v. Proland Mgmt.*, No. 6:23-cv-21-PGB-DCI, Doc. 2; *Barbota v. United States*, No. 6:23-cv-52-ACC-LHP, Doc. 7; *Fowler-Tolbert v. Thi E-Commerce, LLC*, No. 5:22-cv-672-JA-PRL, Doc. 3; *Izquierdo v. Conduent State & Local Sols. Inc.*, No. 6:21-cv-602-GAP-LHP, Doc. 6; *Imiracle (HK) Ltd. v. MMK Jordan, LLC*, No. 8:22-cv-02892-KKM-AEP, Doc. 3; *c.f. Myers v. Naples Beach Club Land Tr. Tr., LLC*, No. 2:22-cv-751-JES-NPM, Doc. 2, at 2 (setting forth the procedures for the Ft. Myers Division and requiring the Disclosure Statement to be filed "immediately").

Mr. Ford's Motion for Reconsideration was baseless. The frivolity of the motion combined with the accusatory tone caused the Court to set it for a hearing. (Apr. 11, 2022 Min. Entry, Doc. 10). At the hearing, Mr. Ford was given an opportunity to supplement his argument but still failed to provide any legitimate basis for his request. Shortly after the hearing, Mr. Ford filed a "Response to Order" (Doc. 11), supplementing his Motion for Reconsideration and explaining that neither Plaintiff nor Mr. Ford could afford to pay a second filing fee. (*Id.* at 1). While the Court was deliberating on the Motion for Reconsideration, Mr. Ford reversed course and filed a "Withdrawal of Motion for Reconsideration; Notice of Intent to File an Appeal to the U.S. Eleventh Circuit Court of Appeals; and Notice of Intent to Re-

File Original Complaint in the U.S. District Court"[2] (*See generally* "Withdrawal,"

Doc. 14).[3]

This Withdrawal was also a turning point for the Court and the impetus for

this Order.[4] The majority of the Withdrawal is an unprofessional diatribe filled with

personal attacks and unfounded accusations of intentional discrimination and racial

bias. For example, the Withdrawal states: "We believe that the U.S. District Court

Judge abused his discretion, and the effect of that abuse is inherently judicially

biased and has discriminatory effect upon African American, indigent, and similarly-

situated plaintiffs. This note may be reference [sic] in any future litigation as judicial

---

[2] Despite Mr. Ford's representations that his client could not afford to pay an additional filing fee in this Court, the decision to appeal this Court's dismissal order required Plaintiff to not only pay an additional filing fee here, *Rembert v. Dunmar Ests.*, No. 6:22-cv-877-CEM-LHP, she was also required to pay an appellate filing fee, *see Rembert v. Dunmar Ests.*, No. 22-11526, Doc. 16, at 1 (11th Cir. June 3, 2022) ("The Plaintiff-Appellant does not wish to file an indigency application, although she is currently unemployed. Through help from her family members, the Plaintiff-Appellant has raised funds, and mailed a check to the undersigned attorney's office" to pay the $505.00 appellate filing fee). Additionally, Mr. Ford again failed to comply with the Local Rules and Court Orders in the re-filed case, which has now been dismissed for his failures, 6:22-cv-00877-CEM-LHP, Doc. Nos. 50, 53, and in which Mr. Ford has again filed an appeal, *id.*, Doc. 55.

[3] Mr. Ford first filed a withdrawal of the Motion for Reconsideration on April 22, 2022 (Doc. 12), but the next day he filed a notice withdrawing that withdrawal (Doc. 13) and immediately filed a "corrective" withdrawal of the Motion for Reconsideration (Doc. 14). After a comparison of the two documents, it does not appear that there are substantive differences between them; the "corrective" document appears to simply be edited for typos, grammar, and flow. All references to the Withdrawal in this Order are to the second, "corrective" withdrawal filed at docket entry 14.

[4] The substantive arguments set forth in the Withdrawal relating to the propriety of the dismissal were frivolous, and in the following appeal, the Eleventh Circuit summarily affirmed the dismissal order. (Opinion, Doc. 23, at 5–6 ("[D]o courts have the power to dismiss cases sua sponte under Fed. R. Civ. P. 41(b)? Yes. That power 'cannot seriously be doubted' when the dismissal is for failure to comply with 'any order of court,' even if it is 'with prejudice.'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962))).

bias and unfair prejudice as grounds for a motion for recusal." (Doc. 14 at 8 n.29).
Mr. Ford also argues that "[t]his matter is extraordinarily significant for members of
the African American community," because they "tend to experience great
difficulties in," *inter alia*, "presenting meritorious claims and contentions . . . before
federal judges who are also African American or who are empathetic towards their
plight." (*Id.* at 9). Mr. Ford goes on to assert that he "sense[s] that the U.S. District
Court Judge in this case is neither an African American judge, or a judge who is
empathetic towards the plight of that community." (*Id.* at 10).

These statements are merely a sampling of the more direct accusations in the
Withdrawal. The tone of the entire filing is unprofessional and improper. *See, e.g.,*
*id.* at 2 ("Under the United States Constitution, no one person, not even a United
States District Court Judge, is above the rule of law"), 2 n.2 ("The U.S. District
Court's Dismissal Order (Doc. #5) deprecates the Plaintiff's Bar [and the] the social
justice mission of Plaintiff's lawyers seeking to help the poor, vulnerable, and
weak"), 7 (asserting that the dismissal order was "unreasonable and unjust—nay,
even oppressive"), 10–11 (accusing the undersigned of intentionally attempting to
block Plaintiff from asserting her claims and insinuating that it was due to
discriminatory motives)).

Unfortunately, this vitriolic attack is nothing new for Mr. Ford. For example,
in *In Re Ford*, No. 8:19-cv-02724-MSS, Mr. Ford was representing himself in a

bankruptcy appeal, and after the District Judge affirmed the Bankruptcy Court's orders—a ruling that was unfavorable to Mr. Ford—Mr. Ford filed a Motion for Reconsideration, No. 8:19-cv-02724-MSS, Doc. 17, a Motion to Recuse the District Judge, No. 8:19-cv-02724-MSS, Doc. 19, and a document titled "General Objections and Response to Orders Denying Motion to Recuse and Motion for Reconsideration and Motion to Reopen Closed Case," No. 8:19-cv-02724-MSS, Doc. 23. In each of these filings, Mr. Ford attacks the presiding District Judge in a particularly egregious manner.[5]

To put this discussion into context, the substantive issue in the *In Re Ford* case was a question as to the amount of Mr. Ford's non-dischargeable domestic support obligations. No. 8:19-cv-02724-MSS, Doc. 16, at 2–7. This was a question that had to be answered by the state court, so the Bankruptcy Court directed Mr. Ford to return to state court for such a determination. *Id.* The Bankruptcy Court then gave Mr. Ford a deadline by which to file an amended Chapter 13 plan. *Id.* Mr. Ford did not return to state court and failed to timely file an amended plan, despite having actual notice of the requirements and the deadline being stated explicitly in a written

---

[5] Mr. Ford's diatribes against the District Judge in *In Re Ford* apparently stem from his perception that her Order inappropriately attacked his character, *see, e.g.*, No. 8:19-cv-02724-MSS, Doc. 17, at 4, and if left undisturbed would leave the perception that Mr. Ford, among other things, "[i]ntentionally disrespects judges and fellow members of the bar," *id.* Ironically, the District Judge's Order is quite moderate and merely points out that Mr. Ford had notice of the Bankruptcy Court's orders and deadlines and did not comply with them. *See, e.g.*, No. 8:19-cv-02724-MSS, Doc. 16, at 13. Instead, as laid out extensively herein, it is Mr. Ford's own filings that make it apparent that he is intentionally disrespectful to judges and fellow members of the bar.

order by the Bankruptcy Court. *Id.* The Bankruptcy Court dismissed Mr. Ford's case without prejudice for his failures, and the District Court affirmed, *id.* at 7, 15; a decision that was subsequently affirmed by the Eleventh Circuit, No. 8:19-cv-02724-MSS, Doc. 33.

Instead of making sound legal arguments or taking responsibility for his missteps, Mr. Ford launched an attack on the District Judge. He accused the presiding District Judge of "personal bias" against him and stated that her "personal bias is racial discrimination." No. 8:19-cv-02724-MSS, Doc. 19, at 9. Mr. Ford then noted that the District Judge was an African American woman and submitted self-authored articles[6] that purportedly support his claims of "black-against-black discrimination," particularly discrimination by black women against black men. *See, e.g.*, No. 8:19-cv-02724-MSS, Doc. 19-2. Mr. Ford's attacks became more odious with each filing. *See, e.g.*, No. 8:19-cv-02724-MSS, Doc. 23 ("Nor is there any rational basis to presume or conclude that Judge Scriven, who is herself an African American, would not knowingly, willingly, and intentionally oppress, humiliate, and discriminate against Attorney Ford simply because he, too, is an African American. Indeed, within the African American experience, African Americans have been found guilty of discriminating against other African Americans, for a variety of reasons such as: skin complexion, religion, national origin, political affiliations,

---

[6] These articles do not appear to have been published.

socioeconomic status and gender. In this case, Attorney Ford claims, only have [sic] long hours of deliberation, that Judge Scriven's *ad hominem* assertions and descriptions of him in her various Orders were racially discriminatory." (emphasis omitted)). He also made similarly unfounded allegations in a letter to the Chief Judge for the Middle District of Florida, 8:19-cv-02724-MSS, Doc. 18–1, and a Notice of Intent to File an Ethics Complaint with the Eleventh Circuit, 8:19-cv-02724-MSS, Doc. 24. Indeed, this type of behavior from Mr. Ford towards the judiciary appears to be his normal operation. *See, e.g.*, *In Re Ford*, 8:18-cv-02053-WFJ, Doc. 10, at 4–5, 7 (attacking a different District Judge in another of Mr. Ford's personal bankruptcy appeals where he is proceeding pro se and seeking recusal of the District Judge for advising Mr. Ford to consult with a bankruptcy attorney, and Mr. Ford stating, *inter alia*, "[i]t goes without saying that judges who are unfamiliar with African American sociology and contemporary history will not have the proper tools to address many equitable petitions, issues, or cases involving African Americans").

As concerning as Mr. Ford's behavior toward the Court and members of the judiciary are, perhaps even more concerning is Mr. Ford's behavior toward opposing counsel because they do not have the same ability as the Court to protect themselves from Mr. Ford's antics. In *Lincoln Memorial Academy v. School District of Manatee County*, Mr. Ford and his clients failed to respond to discovery requests, resulting in extensive litigation before the Magistrate Judge, several orders requiring

compliance, and misrepresentations by Mr. Ford of compliance when it had not occurred. No. 8:20-cv-00309-CEH-AAS, Doc. 115 at 1–4. Ultimately, the defendant's fees were taxed against Mr. Ford personally because it became clear that he failed to "ensure his clients were aware of and fulfilled their discovery obligations." *Id.* at 12, 13–14. Instead of addressing the merits of the discovery issues however, Mr. Ford began lodging unfounded accusations of racial bias against opposing counsel.[7]

For example, in his response to the defendant's motion for sanctions, Mr. Ford stated: "There is judgment and a feeling among and between the Plaintiffs, all of whom are African American, as well as their undersigned counsel, who is also an African American, that the Defendant School District of Manatee County's Motion for Sanctions is really designed to be a form of be [sic] retaliation against them for exercising the First Amendment right of petition and of court access." No. 8:20-cv-00309-CEH-AAS, Doc. 105, at 3; *see also id.* at 13–14 (discussing his view of historical racism within the judiciary and stating that "this U.S. District Court may fairly ask . . . while construing the Defendant SDMC's 'Motion for Sanctions,' where the moving party (Defense Attorney Erin Jackson) is a white lawyer and who

---

[7] Once the Magistrate Judge ruled against Mr. Ford, he also began his normal attacks on her, accusing the Magistrate Judge of being "clearly biased in favor of the Defendants" and arguing that her sanction of Mr. Ford "is consistent with the genre of judicial bias that has historically be [sic] directed, unfairly and unethically, against African American attorneys." No. 8:20-cv-00309-CEH-AAS, Doc. 145, at 6 n.2, 16.

represents a far more influential and powerful white employer, and where the non-moving parties are all African American workers with far less resources—is whether the Defendant SDMC's 'Motion for Sanctions' is really and honestly motivated by retaliatory or racial bias against the Plaintiffs, in a historic attempt to unconstitutionally block their right to meaningful court access"). To reiterate, these accusations were based solely on the fact that the defendants moved for sanctions after exhausting all other avenues to get Mr. Ford and his clients to comply with discovery requests and Court orders—there was no basis for accusations of racial bias. And this is certainly not the first time Mr. Ford has engaged such a tactic against opposing counsel.

In *Leaks v. Geopoint Surveying, Inc.*, the Magistrate Judge granted a motion to compel and awarded attorney's fees against Mr. Ford and his client for a host of discovery violations. No. 8:19-cv-00562-JSM-AAS, Doc. 44. In his Motion for Reconsideration, Mr. Ford mounted an acerbic attack on opposing counsel and the issuing Magistrate Judge. *Id.*, Doc. 56. While the Court could quote nearly the entire document as an example of inappropriate behavior, it will focus on the most repugnant section. In short, Mr. Ford stated: "We believe that 'racial bias' was the motivating factor behind the Defendant's 'Motion For Sanctions and to Compel.' There is no other justification for this motion, except to conclude that African American Title VII plaintiffs and African American lawyers are more likely that

[sic] not irrational in thought and behavior at every stage in the litigation process. We believe that this court, by accessing [sic] fees and costs against Plaintiff Leaks and the undersigned, has violated Plaintiff Leaks' constitutional right to court access and, most ominously, encouraged, aided and abetted 'racial bias' and discrimination against both Plaintiff Leaks and his undersigned legal counsel." *Id.* at 10–11. Mr. Ford's accusations were entirely baseless. No. 8:19-cv-00562-JSM-AAS, Doc. 74, at 6 ("There is no evidence of bias other than Mr. [Ford's] speculation. Rather, [Defendant's] counsel extensively documented their efforts to obtain discovery and their willingness to work with Mr. Leaks and his counsel as evidenced by agreeing to multiple extensions and drafting and agreeing to a stipulated order on disputed discovery on the eve of a court hearing.").[8] *Leaks* and *Lincoln Memorial Academy* are a mere sampling of Mr. Ford's rampant unprofessional behavior towards opposing counsel. *See, e.g.*, *Cox v. City of Orlando*, No. 6:09-cv-2039-GAP-GJK, Doc. 42, at 3, 13 (accusing opposing counsel of "create[ing] a chilling effect on Plaintiff Cox (an African American man) who seeks to vindicate his civil rights" by serving Mr. Ford with a Rule 11 motion and arguing that "denying the Plaintiff's

---

[8] Mr. Ford filed an equally frivolous Motion for Sanctions against the defendant, making similar, unfounded accusations. No. 8:19-cv-00562-JSM-AAS, Doc. 53, at 5 ("We believe that the Defense Counsel's persistent and unscrupulous efforts to press frivolous and non-existent discovery issues . . . have been made with no good-faith basis and filed solely to impugn both the Plaintiff and the Plaintiff's counsel because (a) they are African American litigants/ parties/ cousel [sic] and (b) because the nature of the lawsuit involves federal civil rights that are designed to protect the federal and constitutional rights of African Americans . . . ."). That motion was denied. No. 8:19-cv-00562-JSM-AAS, Doc. 75.

Motion To Amend would effectuate a 'badge or incident of slavery'"); *Zachary v. Wellcare Health Plans, Inc.*, No. 8:12-cv-00530-VMC-AEP, Doc. 12, at 10–12 (stating in an email to opposing counsel: "After carefully reviewing the whole history of this claim, and our communication, I now have grave concerns that your suggesting a Motion for Sanctions, based upon a presumption of my having maliciously deceived an officer of the court and the court is completely influenced by a notion that black people are monstrous criminals, no matter how much education they may have. We have reached a sad moment in the legal profession where lawyers automatically presume that other lawyers are some sort of vicious, unprincipled, criminal-minded gangsters who have nothing better to do than to lie and deceive" and then claiming that "there [was] no logical or rational basis for [opposing counsel] to have concluded that [Mr. Ford] had actually accused him of being a racist or referred to him as a racist" despite the above rant (emphasis omitted)).

Given this sampling of Mr. Ford's more egregious behavior, the Court is convinced that something must be done to curtail such abuses. However, this is not where the story ends. In addition to the unprofessional conduct discussed above, the Court must note Mr. Ford's repeated, extensive history of failing to comply with court orders, the Local Rules, and the Federal Rules of Civil Procedure. *See, e.g., Short v. Immokalee Water & Sewage Dist.*, No. 2:18-cv-00124-SPC-UAM, Doc. 19

(Order to Show Cause for failure to attend a preliminary pretrial conference); *Cox v. City of Orlando Police Dep't*, No. 6:09-cv-02039-GAP-GJK, Doc. 51 (striking a reply that was improperly filed per the Local Rules); *id.,* Doc. 57 (Order to Show Cause for failure to attend a scheduled mediation); *Smith v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, No. 6:17-cv-02062-GAP-DCI, Doc. 60 (striking the plaintiff's Amended Complaints for failure to comply with the Federal Rules of Civil Procedure and the Court's scheduling order); *Heid v. Rutkoski*, No. 6:20-cv-00727-RBD-DCI, Doc. 19 (Order to Show Cause for failure to comply with the Court's previous order directing the filing of an exhibit); *id.*, Doc. 28 (Order to Show Cause for failure to comply with the Court's previous order regarding payment of the filing fee or affidavit of indigency); *Jackson v. City of Tampa, Dep't of Pub. Works (DPW)*, No. 8:03-cv-02328-SDM-MAP, Doc. 24 (Order to Show Cause for failure to file a case management report); *id.*, Doc. 31 (Order to Show Cause for failure to file a notice of mediation); *Marshall v. Univ. Cmty. Hosp.*, 8:04-cv-01049-JSM-MSS, Doc. 5 (Order to Show Cause for failure to timely effectuate service); *Sampson v. Univ. of S. Fla. Student Health Servs.*, 8:04-cv-01050-SDM-TGW, Doc. 16 (Order to Show Cause for failure to file a notice of mediation); *id.*, Doc. 30 (striking improper voluntary dismissal for failure to comply with Federal Rule of Civil Procedure 41); *Samelton v. Walpole, Inc.*, No. 8:04-cv-01417-RAL-MAP, Doc. 3 (Order to Show Cause for failure to timely effectuate service); *Sims v. Certegy, Inc.*,

No. 8:04-cv-01900-SDM-E_J, Doc. 4 (Order to Show Cause for failure to timely effectuate service); *Mitchell v. Prison Health Servs.*, No. 8:04-cv-02123-RAL-MAP, Doc. 16 (Order to Show Cause for failure to file a Case Management Report); *Witcherd v. Principi*, No. 8:04-cv-02296-EAK-E_J, Doc. 8 (Order to Show Cause for failure to file a Case Management Report); *Osagiobare v. Cardinal Health, Inc.*, No. 8:05-cv-00891-RAL-MSS, Doc. Nos. 5–8, 10–14 (continuing to file on behalf of the plaintiff after he withdrew as counsel and after being told by the Court that he is not permitted to do so); *Fino v. Health Integrated, Inc.*, No. 8:06-cv-02395-SCB-TGW, Doc. 4 (Order to Show Cause for failure to timely effectuate service); *Crawley v. Paskert-Johnson Co.*, No. 8:07-cv-01789-SDM-TGW, Doc. 34 (Order to Show Cause for failure to file a Case Management Report); *Brown v. Hillsborough Cnty. Sheriff's Off.*, No. 8:08-cv-00088-VMC-TGW, Doc. 17 (Order to Show Cause for failure to file a Case Management Report); *Vernon v. Home Shopping Network*, No. 8:08-cv-00559-RAL-MAP, Doc. 7 (Order to Show Cause for failure to file a Case Management Report); *Frett v. Greyhound Bus Lines, Inc.*, No. 8:08-cv-01276-EAK-AEP, Doc. 6 (Order to Show Cause for failure to timely effectuate service); *id.*, Doc. 30 (Order to Show Cause for failure to file a Case Management Report); *Bell v. J.P. Morgan Chase*, No. 8:08-cv-01545-JSM-TBM, Doc. 11 (Order to Show Cause for failure to timely effectuate service); *Graham v. Conmed Linvatec*, No. 8:09-cv-00954-RAL-TBM, Doc. 11 (Order to Show Cause for failure to file a Case

Management Report); *Powell v. Indep. Inventory Serv., Inc.*, No. 8:10-cv-01558-EAK-TBM, Doc. 76 (Order to Show Cause for failure to file a Case Management Report); *Hamilton v. Palma Ceia Golf & Country Club*, No. 8:10-cv-02097-VMC-TGW, Doc. 4 (Order to Show Cause for failing to timely effectuate service); *Robinson v. Aerotek, Inc.*, No. 8:11-cv-00148-EAK-AEP, Doc. 6 (dismissing case for failure to comply with a court order); *Green v. Namasco, Inc.*, No. 8:11-cv-02335-VMC-AEP, Doc. 5 (Order to Show Cause for failing to timely effectuate service); *Lane v. G.A.F. Material Corp.*, No. 8:11-cv-02851-JSM-TBM, Doc. 30 (Order to Show Cause for failure to schedule mediation); *Zachary v. Wellcare Health Plans, Inc.*, No. 8:12-cv-00530-VMC-AEP, Doc. 10 (Order to Show Cause for failure to file a Case Management Report); *Joseph v. City of Tampa*, No. 8:12-cv-00744-SDM-TBM, Doc. 3 (striking the Complaint for failure to comply with the Local Rules); *Miller v. Hillsborough Cnty. Pub. Schs.*, No. 8:12-cv-00993-JDW-TBM, Doc. 17 (Order to Show Cause for failing to select a mediator); *Peeples v. Acs*, No. 8:12-cv-01340-VMC-E_J, Doc. 18 (dismissing case for failure to effectuate service after issuing an Order to Show Cause that Mr. Ford did not respond to); *Amador v. Animal Specialty Hosp. of FL*, No. 8:12-cv-01835-MSS-TGW, Doc. 5 (Order to Show Cause for failure to timely effectuate service); *Wesley v. Home Depot*, No. 8:13-cv-00967-SDM-E_J, Doc. 6 (Order to Show Cause for failure to timely effectuate service); *Turner v. Whole Foods Mkt., Inc.*, No. 8:13-cv-02181-

JDW-E_J, Doc. 7 (Order to Show Cause for failure to timely effectuate service); *Gaston v. Perkins Law Firm Grp. LLC*, No. 8:14-cv-01670-JSM-TBM, Doc. 6 (Order to Show Cause for failure to respond to a Motion to Dismiss); *Mott v. Wilkie*, No. 8:17-cv-00093-JSM-JSS, Doc. 15 (Order to Show Cause for failure to file a Case Management Report); *id.*, Doc. 23 (Order to Show Cause for failure to select a mediator); *In Re Ford*, 8:17-cv-02833-MSS, Doc. 6 (Order to Show Cause for failure to timely file brief); *McConico v. City of Tampa*, No. 8:18-cv-00359-JSM-CPT, Doc. 11 (Order to Show Cause for failing to respond to a Motion to Dismiss); *Norton v. Health Am. CID 1804583*, No. 8:18-cv-00557-CEH-JSS, Doc. 10 (Order to Show Cause for failure to timely effectuate service); *In Re Ford*, 8:18-cv-02053-WFJ, Doc. 28 (Order to Show Cause as to why the case should not be dismissed for lack of subject matter jurisdiction); *id.*, Doc. 33 (dismissing a portion of the appeal because it was untimely); *Leaks v. Geopoint Surv., Inc.*, No. 8:19-cv-00562-JSM-AAS, Doc. 39 (Order to Show Cause for failing to respond to a Motion for Summary Judgment); *Poor & Minority Just. Ass'n v. Cowart*, No. 8:19-cv-02889-WFJ-TGW, Doc. 21 ("The Court previously informed [Mr. Ford] that under the local rules, Motions that are not responded to are deemed unopposed. The time for responding to the present defense motions has passed. If Plaintiffs oppose these motions, Plaintiffs should file a memorandum in response to each motion no later than May 15, 2020 or they will be deemed unopposed."); *Wilson v. Benefytt Techs., Inc.*, 8:22-cv-00326-SCB-JSS,

Doc. 5 ("Plaintiff is directed to SHOW CAUSE for failing to serve Defendant Benefytt Technologies, Inc. within 90 days of filing the complaint. On 4/28/22, Plaintiff filed . . . a Waiver of Service of Summons for Publix Super Markets, Inc., who is not a Defendant named in this case."); *Chandler v. Terrace Hotel Corp.*, No. 8:22-cv-00811-SDM-SPF, Doc. 6 (striking Complaint for failure to comply with the Local Rules).

With this background in mind, the Court moves on to the legal ramifications of such behavior.

## II.   LEGAL STANDARD

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Accordingly, 'courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Id.* (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1131–32 n.110 (11th Cir. 2001)). As such, "even absent explicit legislative enactment, deeply rooted in the common law tradition is the power of any court . . . to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Id.* (quoting *Carlucci*

*v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985). The Court may exercise this authority "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)).

"Due to the scope of the inherent powers vested in federal courts, however, it is necessary that such courts 'exercise caution in invoking [their] inherent power'" and "before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'" *Thomas*, 293 F.3d at 1320 (first quoting *Chambers*, 501 U.S. at 50 and then quoting *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918 (11th Cir. 1982)).

## III.   ANALYSIS

There is no doubt that Mr. Ford has acted in bad faith. *See id.* at 1321 (affirming the district court's sanction of an attorney under its inherent authority for the contents of five documents filed by the attorney that were "saturated with invective directed at opposing counsel," and, among other things, "contain[ed] attacks upon the fitness of opposing counsel as a member of the bar", included a remark that the attorney "was unimpressed with [opposing counsel] or his race," and were "strewn with generalizations and conclusory comments that paint opposing counsel as a racist bigot and thus impugn his character"); *id.* at 1331–32 ("[W]e

point out that, in her appellant brief, [attorney] Munson has made insulting and demeaning remarks about the district judge, such as by calling him 'a protectorate of white America.' . . . At times, the line between legitimate criticism and insult can be a blurry one, but Munson has exhibited a pattern of baseless accusations and invective in this case that is nowhere near that line. . . . Future submissions to this court by Munson that contain accusations or comments that have no basis in fact and that serve only a harassing or frivolous purpose—whether aimed at a district judge, opposing counsel, or any other individuals involved in a given case—will not be tolerated and will be cause for severe sanction."); *Bussey-Morice v. Kennedy*, No. 6:11-cv-970-Orl-41GJK, 2018 U.S. Dist. LEXIS 178137, at *53–54 (M.D. Fla. Jan. 12, 2018) (imposing sanctions under the Court's inherent authority noting "[t]he most outrageous conduct exhibited by Plaintiff's counsel is likely their frequent, baseless suggestions of racial bigotry directed towards Defendants, defense counsel, and even the Court. Indeed, Plaintiff's counsel has repeatedly disparaged the Court's decisions, while accusing the Court of acting based on an unfounded alleged racial bias or other notions of partiality" and documenting one of the attorney's "pattern of reckless behavior in litigating numerous cases throughout Florida"); *Maus v. Ennis*, No. 6:10-cv-1904-Orl-31DAB, 2011 U.S. Dist. LEXIS 100429, at *4–6 (M.D. Fla. Aug. 17, 2011), *Report and Recommendation adopted*, 2011 U.S. Dist. LEXIS 100597, at *1 (M.D. Fla. Sep. 7, 2011) (determining that the pro se defendant "acted

intentionally, in bad faith, and for oppressive reasons" by, *inter alia*, repeatedly calling opposing counsel "a racist and a bigot who should be disbarred" in email correspondence).

Additionally, Mr. Ford's behavior violates the Rules Regulating the Florida Bar. *See, e.g.*, Fla. Bar Reg. R. 4-8.2(a) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ."); Fla. Bar Reg. R. 4-8.4(d) ("A lawyer shall not: . . . engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . ."); *Fla. Bar v. Patterson*, 330 So. 3d 519, 527–28 (Fla. 2021) (imposing a two-year suspension for various violations of the Florida Rules of Professional Conduct and noting "Patterson's repeated, unfounded allegations of racial bias were particularly egregious. And they were especially damaging—not just to the individuals whose character he unjustly impugned, but more broadly to the public's confidence in our judicial system. Patterson's behavior was diametrically opposed to the civility and professionalism that our Bar Rules and the Oath of Admission demand."); *c.f. Thomas*, 293 F.3d at 1323 n.25 ("[A] federal court can charge attorneys with

knowledge of, and hold them accountable to, state ethics rules in the state where the court sits.").

## IV.   CONCLUSION

In accordance with the forgoing, it is **ORDERED** that **on or before August 7, 2023**, Attorney Roderick Ford shall **SHOW CAUSE** in writing as to why sanctions, including referral to the Florida Bar, referral to the Middle District of Florida's grievance committee, and monetary sanctions in the form of repaying his client for the frivolous filing fees his actions incurred, should not be imposed. Failure to do so will result in the imposition of sanctions without further notice.

**DONE** and **ORDERED** in Orlando, Florida on July 24, 2023.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record